UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:21-cr-00053-BLW |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| GARY E. MOFFIT | |
| Defendant. | |

## INTRODUCTION

This case is currently set for trial on May 2, 2022. Before the Court are the government's unopposed motion in limine (Dkt 34) and Defendant Gary Moffit's fully briefed, contested motion in limine (Dkt 55). For the reasons discussed below, the Court will grant the governments' motion and grant in part and deny in part Mr. Moffit's motion.

## BACKGROUND

Mr. Moffit is charged with Aggravated Sexual Abuse of a Minor under 12 years of age in violation of 18 U.S.C. §§ 2241(c) and 1153. Dkt. 1. The government alleges that between December 8, 2011, and April 5, 2012, Mr. Moffit sexually abused S.T., who was then 8 or 9 years old.

## LEGAL STANDARD

"Motions in limine are well-established devices that streamline trials and settle evidentiary disputes in advance, so that trials are not interrupted mid-course for the consideration of lengthy and complex evidentiary issues." *United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002). Still, though, a motion in limine should not be used to resolve factual disputes or weigh evidence. *C&E Servs., Inc., v. Ashland Inc.,* 539 F. Supp. 2d 316, 323 (D.D.C. 2008). Rather, unless the proffered evidence is clearly inadmissible for any purpose, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context. Further, rulings on motions in limine are provisional and, therefore, "not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000).

## ANALYSIS

### A.   Mr. Moffit's Prior Bad Acts

#### 1. Criminal History

Between 1985 and 2016, Mr. Moffit was convicted of twenty felonies. The government argues that if he testifies at trial some or all of the convictions may be admissible pursuant to Rule 609.

Rule 609(a)(1)(B) applies when the defendant is the witness and the prior conviction at issue "was punishable by death or by imprisonment for more than one year." Evidence of such a conviction "must be admitted . . . if the probative value of the evidence outweighs its prejudicial effect." Fed. R. Evid. 609(a)(1)(B).

Rule 609(b), on the other hand, applies "if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later." It requires the court to determine whether the conviction's probative value "substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b)(1).

The Ninth Circuit has established five factors for courts to consider when applying either test. *United States v. Alexander*, 48 F.3d 1477, 1488 (9th Cir. 1995); *see also Simpson v. Thomas*, 528 F.3d 685, 690, 690 n.3 (2008) (noting same five factors are to be used under Rule 609(b)). Those factors are "(1) the impeachment value of the prior crime; (2) the point in time of conviction and the defendant's subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the defendant's credibility." *Id*. Generally, "[t]he government bears the burden of showing, based on these factors, that the proffered evidence's probative value substantially outweighs its prejudicial effect." *Id*.

Here, Mr. Moffit has not undertaken the Rule 609 analysis and has not provided the Court sufficient information to determine the admissibility of his prior convictions. He merely argues in a conclusory manner that any probative value of the evidence would be outweighed by the danger of unfair prejudice. [1] The Court needs more information to properly apply the law and so will deny Mr. Moffit's request at this juncture.

## 2.  Incidents on February 20, 2012 and April 2, 2012

The government has indicated that it also intends to introduce the following "other act" evidence: first, evidence that Mr. Moffit's car was found on the side of the road on February 20, 2012 and that he was arrested for leaving the scene; and second, evidence that on April 2, 2012, Mr. Moffit was arrested for driving under the influence.

Federal Rule of Evidence 404(b)(1) prohibits using so-called "other act" evidence—evidence of crimes, wrongs, or other acts—"to prove a person's character in order to show that on a particular occasion the person acted in

---

[1] To be clear, if the government does seek to introduce this evidence at trial, it will bear the burden to show admissibility. In making this ruling, the Court is not making an affirmative determination that the evidence is admissible. Rather, the Court does not have enough information to make a determination about the evidence's admissibility and so will deny Mr. Moffit's request to exclude this evidence now.

accordance with the character." Fed. R. Evid. 404(b)(1). But other acts evidence may be admissible for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

The Ninth Circuit applies a four-part test to determine whether evidence is admissible under Rule 404(b). "Such evidence may be admitted if: (1) the evidence tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; and (4) (in certain cases) the act is similar to the offense charged." *United States v. Bailey*, 696 F.3d 794, 799 (9th Cir. 2012) (internal citation omitted). "The government has the burden of proving that the evidence meets all of the above requirements." *Id* (internal citation and quotation omitted). The Court must exclude evidence that meets this test if the prejudicial impact substantially outweighs the probative value. *Id.*

However, evidence of other acts that "is 'inextricably intertwined' with the charged offense," it is not subject to Rule 404(b) analysis, regardless of whether it can meet the test for admissibility. *United States v. Wells*, 877 F.3d 1099, 1127 (9th Cir. 2017) (quoting *United States v. Beckman*, 298 F.3d 788, 793 (9th Cir. 2002)). "This exception applies when (1) particular acts of the defendant are part

of a single criminal transaction, or when (2) 'other act' evidence is necessary to admit in order to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime." *Id*. (quoting *Beckman*, 298 F.3d at at 794) (cleaned up).

*a.* The Evidence is Subject to Rule 404(b) Analysis

At the outset, the Court must determine whether the contested evidence is "inextricably intertwined" with the charges. It is not.

First, the evidence is not part of a single criminal transaction. The charge at issue in this case concerns an allegation of a single act of sexual abuse. The facts that contemporaneously Mr. Moffit's car was found on the side of the road, he was arrested for leaving the scene, and he arrested for driving under the influence is entirely separate.

Second, the Court is persuaded that the government can offer a coherent narrative of the charged crime without discussing the events of February 20 and April 2. The Court agrees with the government that the evidence would corroborate the statements of S.T. and other witnesses about the timeline of events. But Mr. Moffit's stipulation that he was in the location of the abuse at or near the time it is alleged to have occur also provides corroboration. Unless the government can show that it needs to introduce the evidence at issue to offer a coherent narrative,

the evidence is subject to Rule 404(b) analysis.

> *b.* The Evidence is Not Admissible

The government next has the burden to prove that the evidence meets the

Ninth Circuit's four-part test for determining whether other act evidence is

admissible under Rule 404(b).

The government can show that the other act is not too remote in time,

because both incidents occurred contemporaneously with dates of abuse alleged in

the indictment. The government similarly meets its burden to prove that the

evidence is sufficient to support a finding that defendants committed the other act.

*See United States v. Lague*, 971 F.3d 1032, 1040 (9th Cir. 2020) ("[T]he

government need only lay a factual foundation from which a jury could reasonably

conclude that [the defendant] committed the allegedly-similar bad acts."). Neither

party seems to dispute that the government has obtained evidence—presumably

court and law enforcement records—that satisfy that standard.

The government can also show that the evidence tends to prove a material

point. *See United States v. Lague*, 971 F.3d 1032, 1038 (9th Cir. 2020) ("[U]nder

Rule 404(b), the government bears the burden of proving a logical connection

between [defendant's] purported involvement in the previous act and a material

fact at issue in the crime with which he was charged.") (internal quotations and

citations omitted)(cleaned up). As discussed previously, the evidence corroborates the recollections of S.T, and other witnesses regarding when Mr. Moffit lived at S.T.'s house and allegedly abused her. That corroboration is a material point, which meets this standard.

However, the Court will nevertheless exclude the evidence at this juncture because the prejudicial impact substantially outweighs the probative value. As discussed above, Mr. Moffit's stipulation that he was in the location of the alleged abuse at or near the time it is alleged to have occur provides the same corroboration that the government gets from introducing the evidence here. The government has neither argued nor shown that the evidence provides a greater degree of corroboration than the stipulation. However, the evidence is undoubtably prejudicial as it requires informing the jury that Mr. Moffit committed other bad acts during the same time frame as the alleged crime here. Until the Court is convinced that the evidence has probative value that the stipulation cannot provide, it will exclude the evidence. Mr. Moffit's motion is granted in this respect.

### 3. Testimony About Mr. Moffit's Alcohol Consumption

Mr. Moffit argues that the Court should also exclude anticipated testimony that he was drunk when he stayed at S.T.'s house. Although the government does not address the issue, the Court anticipates the evidence may be inextricably

**MEMORANDUM DECISION AND ORDER - 8**

intertwined with the charge offense. For example, S.T.'s testimony about what she remembers happening to her in the bathroom may involve Mr. Moffit's alcohol consumption. At this time, the Court does not have sufficient information to determine that this evidence is subject to Rule 404(b) analysis and so will deny Mr. Moffit's motion.

### B.  Allegations of Other Acts of Child Sexual Abuse

The next issue is whether evidence that Mr. Moffit committed any other acts of sexual abuse against another child should be admitted. The government has indicated that it does not intend to introduce this evidence in its case and chief.

The government does contend, however, that if Mr. Moffit argues that S.T. has misidentified him as the perpetrator, this evidence should be admitted to show identity under Rule 404(b).

In addition, Mr. Moffit has indicated he may seek to elicit testimony from his stepdaughter, Brittney Yearout, or perhaps another individual, about his pertinent traits and reputation in the community for being protective of children and not being known to be abusive, sexually or otherwise, toward children. The parties agree that the Court does not have enough information at this juncture to determine whether this type of character evidence will be admissible. However, Mr. Moffit asks the Court to determine whether, if such character evidence is

admitted, evidence of his other alleged acts of sexual abuse will also be admissible in cross-examination pursuant to Rule 405(a).

### 1.  Factual Background

The evidence here concerns a report from May 5, 2014 that Mr. Moffit touched a 3-year-old child, K.F. in her pubic area. The report came to light after a fight between K.F.'s father and Mr. Moffit on May 6, 2014. The father told police he had recently learned that a month or two earlier Mr. Moffit had touched his daughter on her genital area.

When Coeur d'Alene Tribal Police met with K.F.'s mother, she described two incidents of possible abuse. First, she said that in March or April of 2014, she left Mr. Moffit alone babysitting K.F. for a short time. When she returned, K.F. was naked from the waist down. Second, she said that in early April, she again left Mr. Moffit alone with K.F. for about ten minutes. When she returned, she said Mr. Moffit was acting weird and pacing back and forth. She spoke to K.F. in private. K.F. told her Mr. Moffit had touched her, pointed to her vaginal area, and complained that the area hurt. The mother noticed redness around K.F.'s genitals. During the conversation with K.F., Mr. Moffit left the home.

K.F. refused to participate in a forensic interview on May 21, 2014, but a physical examination did not reveal any signs of trauma. On August 18, 2020,

**MEMORANDUM DECISION AND ORDER - 10**

K.F.'s mother reiterated this story to the FBI but indicated that she did not want

K.F. interviewed. K.F.'s grandmother—who is also Mr. Moffit's aunt and

godmother— is now K.F.'s guardian and has refused to allow any additional

interviews.

### 2.  The Evidence is Admissible Under Rules 405(a), 413 & 414.

Rule 405(a) provides that when a witness provides "evidence of a person's

character or character trait," on cross examination "the court may allow an inquiry

into relevant specific instances of the person's conduct." Fed. R. Evid. 405(a).

However, where, as here, the specific instances of conduct involve other acts of

sexual abuse, the evidence must also satisfy Rules 413 and 414. Here, the parties

basically ask the court to consider whether—assuming character evidence is

admitted and opens the door to detailed descriptions of specific instances of

conduct—the evidence of the incidents with K.F. is admissible under Rules 413

and 414.

In limited circumstances, prior allegations of child molestation or child

sexual assault may be admissible as an exception to the general prohibition on

prior bad acts under Rule 404(b). *See* Fed. R. Evid. 413 ("In a criminal case in

which a defendant is accused of a sexual assault, the court may admit evidence that

the defendant committed any other sexual assault. The evidence may be considered

on any matter to which it is relevant."); Fed. R. Evid. 414 ("In a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation. The evidence may be considered on any matter to which it is relevant.").

The preliminary requirements for admission under Rules 413 and 414 have been met. The government disclosed information regarding the prior sexual abuse to Mr. Moffit more than 15 days prior to trial. Both the charged offense and the alleged actions with K.F. fit the definition of "sexual assault" and "child molestation" found in Rules 413 and 414. Moreover, the evidence is relevant under Rule 401. As the government succinctly puts it, if Mr. Moffit sexually abused S.T. and then sexually abused K.F., that later abuse is relevant evidence.

To be admissible under Rule 413 and 414, the evidence involving K.F. must also be relevant under Rule 104(b), the rule of conditional relevance. *See United States v. Norris*, 428 F.3d 907, 913-14 (9th Cir. 2005). "When determining whether there is sufficient evidence to satisfy Rule 104(b) . . . . the court simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact by a preponderance of the evidence." *Id.*

Here, that standard will presumably be met if K.F.'s mother testifies to what she saw – her child naked from the waist down, Mr. Moffit's unusual behavior, and

the redness around her child's genitals. Although the Court will not make a preliminary ruling on the hearsay issue, because it has not been fully briefed, it appears that the mother could also testify that K.F. told her Mr. Moffit had hurt and touched her in the vaginal area.

However, Rule 413 and 414 evidence should nevertheless be excluded under Rule 403 if its probative value is substantially outweighed by a danger of unfair prejudice. *United States v. Halamek*, 5 F.4th 1081, 1089 (9th Cir. 2021). To determine whether Rule 413 and 414 evidence should be excluded under Rule 403, the Ninth Circuit directs trial courts to consider:

> (1) the similarity of the prior acts to the acts charged, (2) the closeness in time of the prior acts to the acts charged, (3) the frequency of the prior acts, (4) the presence or lack of intervening circumstances, and (5) the necessity of the evidence beyond the testimonies already offered at trial.

*Id.* (quoting *Unites States v. LeMay*, 260 F.3d 1018, 1027-28 (9th Cir. 2001). Applying these factors to the present case, the Court finds that the evidence should be admitted.

The first factor weighs in favor of admission. To be sure, there are some distinguishing factors. For instance, S.T. was eight or nine years old whereas K.F. was only three. In addition, the nature of the sexual act—penetration compared to touching—is also different. On the whole, however, the similarities between acts

are more significant. In both instances, Mr. Moffit is alleged to have molested young female children who found themselves alone with him in their home.[2] In both instances, the allegations are fundamentally that Mr. Moffit committed a crime of opportunity.

The second factor also weighs in favor admission. Here, there were about two years between the alleged incident with S.T. and the alleged incident with K.F. *See United States v. Thornhill*, 940 F.3d 1114, 1120 (9th Cir. 2019) (finding that "the district court would have been within its prerogative to find this factor in favor of [admission]" where there were 7-10 years between the charged offense and the Rule 414 evidence). "There is no bright line rule for precluding evidence that is remote in time" and two years is relatively proximate. *Id.*

The third and fourth factors are neutral. Both acts are alleged one-offs, so frequency does not weigh in favor of or against admission. Similarly, neither party indicates there are any intervening circumstances to consider.

The fifth and final factor also weighs in favor of admission. "Prior acts evidence need not be absolutely necessary to the prosecution's case in order to be introduced; it must simply be helpful *or practically necessary*." *Id.* Here, that

---

[2] S.T.'s family members were home at the time of her alleged assault, but she was alone with Mr. Moffit in the bathroom.

standard is met because the government seeks to introduce this evidence to rebut specific evidence of Mr. Moffit's allegedly good character or reputation for not abusing children.

The Court will briefly respond to Mr. Moffit's additional objection that the evidence of the incident with K.F. "is not solid or reliable evidence of a past act of child molestation or assault and would not be fair game for cross-examination . . . or direct introduction." Dkt. 66 at 3. Mr. Moffit primarily argues that the evidence is not reliable because K.F.'s mother has a history of methamphetamine abuse, has had her children permanently removed from her care, and did not report the alleged abuse contemporaneously. But Mr. Moffit does not point the Court to any authority directing the Court to consider the reliability of the evidence. Under the governing law, namely the *LeMay* factors and Rule 104(b), the evidence of the incident with K.F. is sufficiently reliable and is admissible. Cross-examination at trial is the appropriate vehicle for Mr. Moffit to test the reliability of the evidence, not the Rule 403 analysis.

### 3.  The Evidence is Not Admissible Under 404(b)

At this time, however, the evidence of the incident with K.F. is inadmissible under 404(b) because the government apparently has not made the required disclosures. Given that the trial is still many months away, the Court anticipates

that this shortcoming will be cured and will, therefore, give some additional

preliminary analysis about admissibility.

This evidence is not inextricably intertwined with the charged offense.

Accordingly, it is only admissible if it is introduced for proper purposes, "such as

proving motive, opportunity, intent, preparation, plan, knowledge, identity,

absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Here, the

government argues that the evidence of the alleged incident with K.F. should be

introduced to show identity in the event that Mr. Moffit argues that S.T. has

misidentified him as the perpetrator.  The Court is not persuaded that the evidence

is admissible for that purpose.  Simply put, the fact that Mr. Moffitt may have

touched K.F. inappropriately does not make it any more or less likely that S.T. has

misidentified Mr. Moffitt as the perpetrator.

On the other hand, it is premature at this point to determine whether it may

be appropriately used for some other purpose, such as motive, intent, modus

operandi, absence of mistake, or lack of accident.  In that regard, it is important to

remember that Rule 404(b) is a rule of inclusion rather than a rule of exclusion. *See*

*United States v. Hadley*, 918 F.2d 848, 850 (9th Cir. 1990) ("evidence is

inadmissible only when it proves nothing but the defendant's criminal

propensities"). Therefore, the Court will not admit the evidence under 404(b) to

**MEMORANDUM DECISION AND ORDER - 16**

show identity, but will reserve ruling on whether it may be appropriately used for some other reason unrelated to propensity.

### C.    S.T.'s Out of Court Statements and Bolstering

Mr. Moffit asks the Court to exclude testimony or other evidence introduced to bolster S.T.'s credibility. In accordance with the Federal Rules of Evidence, and with no opposition from the government, the Court will grant Mr. Moffit's motion in this respect. The jury will determine S.T.'s credibility.

Next, Mr. Moffit asks the Court to decide whether the government may introduce evidence of S.T.'s out of court statements through other witnesses or the taped forensic interview. The Court agrees with Mr. Moffit that from the government's response, it appears it does not intend to introduce Ms. Trevino's out of court statements through others or through the forensic interview recording. Accordingly, the Court will grant this aspect of Mr. Moffit's motion as unopposed. The Court notes, however, that S.T. can certainly testify about her own experiences, including the alleged abuse, her initial disclosure in January 2020, and her interview at the child advocacy center. These statements are not hearsay. Fed. R. Evid. 801(d)(1)(B)(ii).

Mr. Moffitt further discusses the issue of S.T.'s potential identification of him. He seeks to prevent S.T. from identifying him until the requisite foundation of

personal knowledge is established. The government agrees that if it "cannot lay the foundation regarding personal knowledge pursuant to Fed. R. Evid. 602, the Court can then exclude the evidence." Accordingly, Mr. Moffit's motion is granted to the extent that he asks the Court to follow the Federal Rules of Evidence, but the Court will not issue a blanket order.

### D.    Recorded Interview of Mr. Moffit

In this part of his motion, Mr. Moffit primarily objects to the introduction of a recording of his January 20, 2020 interview with an FBI agent. In response, the government explains that it does not intend to introduce the recording or to call the agent to testify in its case in chief. Accordingly, as to the January 20 interview recording, the motion is unopposed and will be granted.

Mr. Moffit further objects to the introduction of a second recording of his interview on June 15, 2021 with Special Agent Edward Jacobson and Police Chief Sam Abrahamson at the Coeur d'Alene Tribal Police Department. When Mr. Moffit met with the officers, they informed him that they had a warrant for his arrest for aggravated sexual abuse of a minor and read him the Miranda warnings. In the interview, he made several statements which the government intends to introduce at trial through Special Agent Jacobson's testimony. The government explains that it would seek to introduce the recording only to rebut a claim by Mr.

Moffit that he did not make the pertinent statements.

Mr. Moffit, for his part, objects to introducing the entire tape of the recording. According to Mr. Moffit, admitting the tape in its entirety—including the agent recounting statements witnesses have made about the crime—would improperly introduce hearsay evidence.

The Court will deny Mr. Moffit's motion because the parties do not present enough information to determine whether admitting the tape would introduce hearsay evidence. Neither party has explained which of the agent's statements recounted the statements of other witnesses. The Court will broadly note that Mr. Moffit's Mirandized statements are plainly admissible. To the extent that the government indeed seeks to introduce portions of the tape in its rebuttal, the Court will need more information about the specific statements that Mr. Moffit believes are hearsay. The motion will therefore be denied, but the Court fully anticipates that the issue will need to be revisited during trial.

### E.    Language Used to Refer to S.T.

As discussed previously, the victim in this case, S.T., alleges that Mr. Moffit abused her when she was 8 or 9. However, she did not disclose the alleged abuse for several years, and she will be 19 years old at the time of trial. Mr. Moffit argues that referencing her by her initial at trial as if she is still a minor child would be

prejudicial to him and deny him his right to a fair trial. The Government responds that it intends to use S.T.'s full name at trial. Accordingly, the Court will grant this unopposed aspect of Mr. Moffit's motion. However, the Court will use S.T.'s initials in public filings because it agrees with the Government that the purpose of the Victims Rights Act favors—but does not necessarily require—that approach. Although the Court generally disfavors reading indictments at trial, if that happens in this case, it would likely be appropriate to use both S.T.'s initials and full name.

Mr. Moffit further argues that the government and its witnesses should not be permitted to refer to S.T. as the "victim." According to Mr. Moffit, this language runs afoul of the presumption of innocence, dilutes the government's burden of proof, and amounts to vouching for S.T.'s credibility.

Upon consideration, the Court finds that Mr. Moffit's motion should be denied, at least at this juncture. Mr. Moffit fails to point to, and the Court is unable to find, any authority holding that references to a complaining witness as a "victim" violates a defendant's constitutional rights, including the presumption of innocence and the government's burden of proof.[3]

---

[3] Courts from nonbinding jurisdictions that have faced the issue of whether references to a complaining witness as a "victim" violated a defendant's constitutional rights have answered the (Continued)

There is some merit to Mr. Moffit's argument that the word "victim" *can* be vouching or subversive of the presumption of innocence. But that is not inherently the case. Rather, as is so often true, the manner, context, and frequency in which the term is used transforms its meaning and connotations. Because the Court is currently unaware if or how the government intends to refer to S.T. as a "victim" at trial, the Court will not, at this stage, generally prohibit the Government from using the term in the opening statement or during the trial.

However, the government is advised that, if it intends to make any "victim" references with respect to S.T., it should submit a proposed curative jury instruction before trial that clearly explains that the term "victim," as used at trial, refers to a person whom Defendant allegedly subjected to criminal conduct. The

---

question in the negative. *See, e.g., Kaufman v. Milyard*, No. CIV.A. 07-CV-01458RE, 2009 U.S. Dist. LEXIS 140968, at *7-8 (D. Colo. Oct. 6, 2009) (denying habeas relief and rejecting the argument that three references to a complaining witness as the "victim" violated the defendant's constitutional right to the presumption of innocence); *Vasquez v. Quarterman*, No. CIVA 3:06CV2339G(BH), 2009 U.S. Dist. LEXIS 140959, at *7 (N.D. Tex. Jan. 29, 2009) (denying habeas relief and holding that references to the complaining witness as an "alleged victim" did not deny the defendant the constitutional right to a fair trial); *United States v. Perez*, No. EDCR1300087AVAP, 2014 U.S. Dist. LEXIS 198353, at *9 (C.D. Cal. May 15, 2014) (denying the defendant's motion in limine seeking to preclude use of the term "victim" at trial after noting that the term could be fairly used in some circumstances), aff'd, 662 F. App'x. 495 (9th Cir. 2016); *United States v. Cohorn*, No. 6:17-cr-60039, 2018 U.S. Dist. LEXIS 196681, at *4-5 (W.D. Ark. Nov. 19, 2018) (rejecting arguments that reference to the complaining witness as a "victim" during trial would violate the defendant's constitutional rights, soften the government's burden of proof, and amount to improper prosecutorial vouching.)

**MEMORANDUM DECISION AND ORDER - 21**

Court further reminds the parties of its general directions to address and refer to witnesses their surname.

### F.    Government's Unopposed Motion

In its motion, the Government essentially asks the Court to apply the rules of evidence and other standard, well-established criminal procedures. Because the motion is unopposed and because the Court would do so anyway, the Court will grant the motion.

**ORDER**

**IT IS ORDERED that:**

1.    Government's Motion in Limine (Dkt. 34) is **GRANTED**.

2.    Defendant's Motion in Limine (Dkt. 55) is **GRANTED** in part and **DENIED** in part consistent with the above discussion.

DATED: March 2, 2022

_____
B. Lynn Winmill
U.S. District Court Judge